United States District Court

Middle District of North Carolina

251 N Main St, Winston-Salem, NC 27101

FILED
NOV 0 9 2021
IN THIS OFFICE
Clerk U.S. District Court
Greensboro, N. C.
By____

4

5                    Daniel James Silva

1:21CV870

6                    Plaintiff

7   Jesse  Schaudies

8   Venable LLP

9   13 management

10  Neal and Harwell                    Trial by Judge demanded.

11

12

13          Defendants

14

15          Per Se Defamation Complaint

16

1

1    I Daniel James silva a resident of North Carolina address (501 Lester lane Winston

2    Salem north Carolina 27103). Bring a Per Se Defamation Complaint aginest the

3    following defendants Jesse  Schaudies, Venable LLP, 13 management and Neal

4    and Harwell here are their address,

5

6                    Jesse  Schaudies

7    718 Thompson Ln Ste 108256 Nashville, TN 37204

8

9                    Venable LLP

10   600 Massachusetts Ave NW, Washington, DC 20001

11

12                   13 management

13   718 Thompson Ln Ste 108256 Nashville, TN 37204

14

15                   Neal and Harwell

16   1201 demonbreun street suite 1000 nashville , TN 37203

17

1

2                    <u>Factual background</u>

3    Taylor swift, James Douglas Baldridge, Venable LLC, neal and harwell, 13

4    management, william T ramsey,mariam n stockton ,  mazianio s Reliford,  are

5    actively involved in a <u>RICO conspiracy</u> **involving** **<u>Fraudulent Trademarks (1989</u>**

6    **<u>sn: 86363039) and  (1989 sn: 86369161)</u>** because Taylor Alison swifts name of

7    her album is called **(T.S. 1989) sn:86369455 not (1989)** they have actively been

8    protecting  fraudulent trademarks (1989 sn: 86363039) and  (1989 sn: 86369161).

9    On 3-5-2021 13 management filed a lawsuit 21C444 : 13 MANAGEMENT LLC

10   V SILVA in DAVIDSON county 5th circuit with judge joe Binley presiding,

11   **<u>lawyer mozianio S Reliford a lawyer of  Neal and Harwell sent me 4 letters on</u>**

12   **<u>march 17th march 24th  April 6th  and April 13th  (Reliford committed at</u>**

13   **<u>least 4 counts of mail  fraud 18 U.S.C. Section 1341—Mail Fraud</u>**).if you read

14   the opening complaint <u>in 21c444</u> it shows they went through my entire litigation

15   history with 13 management and Taylor Swift and her fraudulent trademarks

16   meaning mozianio S Relifords letter was sent in part to continue Taylor swift and

17   Doug Baldridge's many counts of obstruction of justice 1505 and to protect

18   fraudulent Trademarks  (1989 sn: 86363039) and  (1989 sn: 86369161).  Ive filed

19   over 15 lawsuits against swift and her conspirators, **but all cases have fallen short**

3

1  **due to large scale judicial corruption**, I have an active lawsuit in the middle

2  district of **Tennessee case 3:21-cv-00689 Silva v. Aspen et al,** that involves 6

3  judges who over saw my prior cases, but **failed to give my due process** and an

4  <u>**opportunity to be heard, my 5th and 14th amendment rights a judge who is a**</u>

5  <u>**defendant in that case chief justice Waverly D. Crenshaw, Jr, has been**</u>

6  <u>**feloniously impeding the due administration of justice ( 18 U.S. Code § 1505 -**</u>

7  <u>**Obstruction of proceedings before departments, agencies, and committees**</u>

8  <u>**Whoever corruptly,** or by threats or force, or by any threatening letter or</u>

9  <u>communication influences, obstructs, or impedes or endeavors to influence,</u>

10 <u>obstruct, **or impede the due and proper administration of the law** under which</u>

11 <u>any pending proceeding is being had before any department or agency of the</u>

12 <u>United States, or the due and proper exercise of the power of inquiry under which</u>

13 <u>any inquiry or investigation is being had by either House, or any committee of</u>

14 <u>either House or any joint committee of the Congress—</u>

15

16 <u>**Shall be fined under this title, imprisoned not more than 5 years** or, if the</u>

17 <u>offense involves international or domestic terrorism (as defined in section 2331),</u>

18 <u>imprisoned not more than 8 years, or both.</u>

19

4

He has sat on this case **Tennessee case 3:21-cv-00689 Silva v. Aspen et al since**

**09/02/2021** and I asked him to recuse himself as a defendant on 9/20/2021 over 40

days ago, he knew the jig is up and hes facing RICO violations, civil rights

violations for not giving me due process in case **3:21-cv-00480 Silva v. 13**

**Management et al, not giving me a right to be heard.**


**This case that ive filed in the middle district of north Carolina does not call**

**into question the multiple Rico violations perpetrated by Taylor Alison swift**

**and her conspirators, or the multiple civil rights violations and conspiracy**

**against rights committed by officers of the court of both state and the federal**

**level, nor does it call into question fraudulent trademarks trademarks (1989**

**sn: 86363039) and (1989 sn: 86369161). her album is called (T.S. 1989)**

**sn:86369455.**


**Opening argument-**

on 5/19/2020 I went to address 2201 Harding place to serve defendant Taylor

Alison swift a summary judgment and to attempt an arrest on her for the following

crimes,

**Multiple counts of Obstruction of justice 1505**

5

1    **Multiple rico violations**

2    **Multiple counts of 18 U.S. Code § 241. Conspiracy against rights**

3    And multiple other crimes along with her lawyer Doug Baldridge he orchestrated

4    her crimes,  I had gone to address 2201 Harding place and when I got there I was

5    met by 2 armed guards but I did not attempt to beach the gate, I handed over a

6    copy of the my civil rights lawsuit for case  4:19-cv-00286-RH-MJF SILVA v.

7    SWIFT et al. anyway the end result to the incident was being wrongfully arrested.

8    James Douglas Baldridge later went on to state **( I was wearing a bullet proof**

9    **vest),**

10   **At a later date on 3/5/2021** a civil lawsuit was initiated by 13 management in the

11   5th circuit court for Davidson country with judge joe Binkley, Jesse  Schaudies,

12   James Douglas Baldridge and mazianio s Reliford has continued stating the false

13   claim that my lawsuits were **frivolous lawsuits, the definition of  frivolous is a**

14   **lawsuit that has no legal merit.  Thus the following legitimate merits is why I**

15   **file this Per Se Defamation lawsuit.**

16

17

18

6

# __Defamation count 1__

__- on 5/19/2020 I went to address 2201 Harding place to serve defendant Taylor Alison swift a summary judgment and to attempt an arrest on her for the following crimes,__

__Multiple counts of Obstruction of justice 1505( fraudulent Trademarks trademarks (1989 sn: 86363039) and  (1989 sn: 86369161).__

__Multiple Rico violations__

__Multiple counts of 18 U.S. Code § 241. Conspiracy against rights__

__Doug Baldrige later went on to file document  104(exhibit E) in case Case 4:19-cv-00286-RH-MJF__ IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION __he stated on page 1 quote( On May 19, 2020, Plaintiff, Daniel James Silva, drove across state lines to a Swift family home in Nashville, Tennessee, wearing a bullet__

7

**proof vest**, and unlawfully came upon the Swift's property. He claims to have done so for the purposes of (1) serving an "Affidavit" he had drafted, in which he refers to the Honorable Marcia Morales Howard as a "bitch" and threatens criminal proceedings against, essentially, the entire federal judiciary in Florida, and (2) making a **"citizen's arrest"** of Taylor Swift and anyone in the same residence.

**The only problem is I wasn't wearing a bullet proof vest** is was in the car I was in,

**His statement is false libel and Defamatory, and its also a crime  18 U.S. Code § 1001 - Statements or entries generally** (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, **knowingly and willfully—**

**(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;**

**(2) makes any materially false, fictitious, or fraudulent statement or representation; or**

**(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;**

shall be fined under this title, **imprisoned not more than 5 years.**

8

1

The reason why these **false statements** are so damaging **to my reputation and**
**character, they involve stating I was wearing a bullet proof vest, the following**
**case law prove why these false statements are so damaging,**

5

### (People v. Carvey 1997)

Defendant, a passenger in an automobile stopped for a traffic infraction, was
arrested when the police discovered a gun under his seat. Defendant challenges the
legality of the search that took place after he and the other occupants were
removed from the vehicle. We are thus called upon once again to determine
whether information acquired by the police during the course of a traffic stop
justified further intrusion into the interior of an automobile.

13

We agree with the courts below that the police action here was proper. Defendant
was wearing an article uniquely indicative of his present readiness to use an
available firearm a bulletproof vest. This salient fact, when coupled with the police
observation of defendant furtively placing something beneath his seat, warranted
the conclusion that a weapon located in the vehicle presented an actual and specific
threat to the officers' safety. In these particular circumstances, the officers could

9

lawfully reach into the vehicle, even after removing the driver and passengers,

however, the wearing of a bulletproof vest is more immediately associated

with the presence and use of a firearm than an empty holster or practice

target. As we have previously noted, a bulletproof vest "is designed to prevent

the penetration of bullets," and there is an "inherent linkage between a vest

and possession of a firearm" (People v Batista, 88 NY2d at 655; see, People v

Smith, 59 N.Y.2d 454, 459). Indeed, "[t]he whole purpose of the wearing of the

vest is to make it more feasible to go armed, [and] to enhance the advantage of

doing so" (People v Heath, 203 AD2d 17, 19, affd 86 N.Y.2d 723). The act of

wearing a bulletproof vest thus suggests more than the presence of a deadly

weapon it demonstrates its owner's readiness and willingness to use a deadly

weapon (see, Donnino, Practice Commentaries, McKinney's Cons Laws of

NY, Book 39, Penal Law § 270.20, at 480-481 [noting that "`when criminals

have the vest on they believe they are invincible and are less likely to

surrender without a fight'" (quoting NY Times, Mar. 27, 1984, at 1, col 1)];

see also, People v Heath, 86 NY2d at 725, supra).


Here, then, defendant wore an article that uniquely evidenced his preparation

to engage in gun battle as well as his enhanced ability to safely use a deadly

weapon.

10

1

2  So James Douglas Baldridge statement is **extraordinary defamatory** **because by**

3  **wearing a bullet proof vest, in case law that ive found suggest I was preparing**

4  **to use deadly force in a gun battle, btw the bullet proof vest Is my brothers it**

5  **was his car I was using. I can't control what he keeps in his car.**

6

7  ## **Defamation count 2**

8  On 3-5- 3021  13 management filed a protective order lawsuit (21c444) in the

9  circuit court of Davidson country Tennessee with judge joe Binkley residing the

10  law firm  who filed the paper work was (neal and Harwell) with the names William

11  T ramsey, mariam N stockon and mozianio on it, in document 2 <u>MEMORANDUM</u>

12  <u>IN SUPPORT OF PETITION FOR RESTRAINING ORDER</u>**(exhibit B)** it states

13  <u>on page 1 in the introduction,</u> quote (**numerous frivolous litigation proceeding**)

14  also on page 1 (**silvas frivolous lawsuits**), go to page 2 (silva arrived in with body

15  armor in his car) **that's funny Doug Baldridge in federal case document 104 in**

16  **case Case 4:19-cv-00286-RH-MJF IN THE UNITED STATES DISTRICT**

17  **COURT NORTHERN DISTRICT OF FLORIDA TALLAHASSEE**

18  **DIVISION he stated on page 1 quote( On May 19, 2020, Plaintiff, Daniel**

11

James Silva, drove across state lines to a Swift family home in Nashville,

Tennessee, <u>wearing a bullet proof vest,</u>


<u>Go to page 3 of MEMORANDUM IN SUPPORT OF PETITION FOR</u>

<u>RESTRAINING ORDER</u> in case 21c444 quote ( **frivolous lawsuits pending**)

also page 3 ( **vexatious litigation campaign**) go to page 4 ( were ramsey states

again (body armor in his car, also on page 4 (**frivolous lawsuits**) go to page

<u>5,(silvas false and delusional claims)</u> also on page 5 (**delusional**), go to page 7

<u>(unending vexatious litigation campaign),</u> also on page 7 (**unrelenting frivolous**

**litigation campaign**) go to page 8 (**body armor in the car**).


**As a general rule, an individual who repeats or republishes defamation will be**

**subject to the same liability as the publisher of the original defamatory**

**material.** Also see **exhibit C** which was also filed by neal and Harwell it was a 73

page (chronology of Daniel silvas interactions)(page 45) (may 19 2020) qoute(**he**

**arrives in a bullet proof vest** ) which **parrots and repeats Doug Baldridge's**

**lies.**

12

1   Please go to **exhibit D** (NOTICE DECLARATION OF JESSE P. SCHAUDIES,

2   JR. document 4) a reminder this document is **<u>under the penalty of perjury in this</u>**

3   **<u>situation (aggravated perjury under Tennessee state law,</u>** 2010 Tennessee

4   Code

5   Title 39 - Criminal Offenses

6   Chapter 16 - Offenses Against Administration of Government

7   Part 7 - Perjury

8   39-16-703 - Aggravated perjury.

9   (a) **A person commits an offense who, with intent to deceive:**

10   (1) Commits perjury as defined in § 39-16-702;

11   **(2) The false statement is made during or in connection with an official**

12   **proceeding; and (3) The false statement is material.(b) <u>It is no defense that</u>**

13   **<u>the person mistakenly believed the statement to be immaterial.</u>(c) Aggravated**

14   **perjury is a Class D felony.**

15   [Acts 1989, ch. 591, § 1.]

16

13

1  Go to page 1 of exhibit D line 6 **(frivolous litigation campaign)** still on line 6

2  **(frivolous lawsuits) and again (frivolous lawsuits),** go to line 9( **with armor in**

3  **his car )** that completely contradicts document 104(exhibit E) in case Case

4  **4:19-cv-00286-RH-MJF summited by James Baldrige, someone is lying I cant**

5  **show up at someone's house wearing a bullet proof vest while it also being in**

6  **my car.** Line 13 swifts favorite number **(mr. silvas false and delusional claims),**

7  **Go to line 20 (in accordance with tenn. R. civ. P.  I declare under penalty of**

8  **perjury  that the forgoing is true and correct) (lie).**

9

10  <u>**How to prove my cases were not frivolous and that James Baldridge, William**</u>

11  <u>**T ramsey, and mozianion s. Reliford committed both aggravated perjury  39-**</u>

12  <u>**16-703 – at the tennesee state level and (false statements) 18 U.S.C. § 1001**</u>

13  **This court is probably thinking there is no way to prove my cases where not**

14  **frivolous without a federal hearing, please look at (  exhibit A)  it was a**

15  **hearing I had in the middle district of Florida (dkt 36) filed 08/24/18 in case**

16  **(3:18-cv-00688-MMH-JRK)**

17

18

14

1    **Where judge James R. Klindt in the hearing on page 50 rows (9,10)**

2    **look,it ---You have the right to bring this lawsuit and**

3    **you've brought it). Meaning my merits were not and**

4    **have never been Frivolous.**

5

6    I admit to braking judge howards void order in 3:18-cv-00688-MMH-JRK Silva v.

7    TAS Rights Management, LLC but she allowed fraudulent trademarks (1989 sn:

8    86363039) and  (1989 sn: 86369161) while they were pending when she had over

9    1 year and two lawsuits to invalidate them, even if they were not fraudulent

10   trademarks they are unconstitutional due to the supreme court case   **Singer Mfg.**

11   **Co. v. June Mfg. Co., 163 U.S. 169 (1896) one who uses a generic name by**

12   **which articles manufactured under it are known may be compelled to indicate**

13   **that the articles made by him are made by him and not by the proprietors of**

14   **the extinct patent.**

15

1   Where, during the life of a monopoly created by a patent, a name, whether it

2   be arbitrary or be that of the inventor, has become, by his consent, either

3   express or tacit, the identifying and generic name of the thing patented, this

4   name passes to the public with the cessation of the monopoly which the patent

5   created, and where another avails himself of this public dedication to make

6   the machine and use the generic designation, he can do so in all forms, with

7   the fullest liberty, by affixing such name to the machines, by referring to it in

8   advertisements and by other means, subject, however, to the condition that

9   the name must be so used as not to deprive others of their rights or to deceive

10  the public, and therefore that the name must be accompanied with such

11  indications that the thing manufactured is the work of the one making it, as

12  will unmistakably inform the public of that fact.

13

# Standing

14

15  I have the standing to bring this suit due to the fact that the Libel per se false

16  statements made by the defendant's **ruined my reputation.**

17

18

16

**Proper Venue and this court jurisdiction**

Personal jurisdiction over this case by the middle district of north Carolina

28 U.S. Code § 1391 - Venue generally I Daniel james sivla resides in Winston

N.C.


**Relevant case law to bring this suit against these defendants**


**Elements of a Defamation Lawsuit**

**Defamation changes per state laws, but there are some accepted standards**

**that make laws similar no matter where you are or who you are suing.**

**Generally, in order to win your lawsuit, you must show that:**

**Someone made a statement;**

**The statement was published;**

**The statement caused you injury;**

**The statement was false; and**

**The statement did not fall into a privileged category.**

1

The Statement - A "statement" needs to be spoken (slander), **written (libel)**, or otherwise expressed in some manner. Because the spoken word often fades more quickly from memory, slander is often considered less harmful than libel. These statements are especially damaging if they involve a public or private individual and sexual misconduct or the abuse of minors.

7

Publication - **For a statement to be published, a third party (someone other than the person making the statement or the subject of the statement) must have seen, heard or read the defamatory statement**. Unlike the traditional meaning of the word "published," a defamatory statement does not need to be printed. Rather, a statement heard over the television or seen scrawled on someone's door is considered to be published.

14

Falsity - Defamation law will only consider statements defamatory if they **are, in fact, false.** A true statement is not considered defamation. Additionally, because of their nature, statements of opinion are not considered false because they are subjective to the speaker.

19

18

1    **Unprivileged** - Lastly, in order for a statement to be defamatory, **it must be**

2    **unprivileged.** You cannot sue for defamation in certain instances when a statement

3    is considered privileged. For example, when a witness testifies at trial and makes a

4    statement that is both false and injurious, the witness will be immune to a lawsuit

5    for defamation because the act of testifying at trial is privileged.

6

7              **Federal and state laws to bring this suit**

8    **28 U.S. Code § 4101 - Definitions**

9    **(1) Defamation.—**

10   **The term "defamation" means any action or other proceeding for defamation,**

11   **libel, slander, or similar claim alleging that forms of speech are false, have**

12   **caused damage to reputation or emotional distress, have presented any person**

13   **in a false light, or have resulted in criticism, dishonor, or condemnation of any**

14   **person.**

15   **(2) Domestic court.—**

16   **The term "domestic court" means a Federal court or a court of any State.**

17

18

19

## North Carolina state law for libel

**North Carolina has a broad definition of libel per se. This term refers to statements so egregious that they will always be considered defamatory and are assumed to harm the plaintiff's reputation, without further need to prove that harm. In North Carolina, a statement that does any of the following things amounts to libel per se:**

**charges that a person has committed an infamous crime;**

**charges a person with having an infectious disease;**

**tends to impeach a person in that person's trade or profession; or**

**otherwise tends to subject one to ridicule, contempt, or disgrace.**

**This last category of libel per se is quite broad and is not recognized by most other states.**

1

## Actual Malice and Negligence

2 In North Carolina, a private figure plaintiff bringing a defamation lawsuit must

3 prove that the **defendant was at least negligent with respect to the truth or**

4 **falsity of the allegedly defamatory statements**. Public officials, all-purpose

5 public figures, and limited-purpose public figures must prove that the defendant

6 acted with actual malice, i.e., knowing that the statements were false or recklessly

7 disregarding their falsity. See the general page on actual malice and negligence for

8 details on the standards and terminology mentioned in this subsection.

9

10 ## Statute of limitations on libel

11

12 North Carolina General Statutes Chapter 1. Civil Procedure § 1-54. One year

13

14 Within one year an action or proceeding --

15

16 (1) Repealed by Session Laws 1975, c. 252, s. 5.

17

(2)  Upon a statute, for a penalty or forfeiture, where the action is given to the State

alone, or in whole or in part to the party aggrieved, or to a common informer,

except where the statute imposing it prescribes a different limitation.


**(3)  For libel and slander.**


Under this law North Carolina General Statutes Chapter 1. Civil Procedure § 1-54

Defendants Jesse  Schaudies and Neal and Harwell and 13 management fall within

1 year of this statue (3-5-2021) however Venable LLP is being sued for james

Douglas Baldridges criminal false statements made on 5/21/20 around 1 year, 5

months ago but the slander/ false statements was made in a Florida federal court

**under Florida law You have two years to file a defamation lawsuit in Florida,**

**according to Florida Statutes section 95.11, which sets this deadline for the**

**filing of any civil action seeking a remedy for any act of "libel or slander"**

If this court should prefer I leave Venable llp out of the case due to the statue of

limitations in North Carolina I will and amendment my complaint, also Neal and

Harwell repeated Baldridge's false statements in a criminal conspiracy which

should reset the limitations under NC law for Venable LLP.

22

1

2  <u>Pro se case law,</u>

3  **<u>Non-Lawyer pro se litigants not to be held to same standards as a practicing</u>**

4  **<u>lawyer</u>**

5  <u>Many pro se litigants will use this in their pleadings; "Pleadings in this</u>

6  <u>case are being filed by Plaintiff In Propria Persona, wherein pleadings are</u>

7  <u>to be considered without regard to technicalities. Propria, pleadings are</u>

8  <u>not to be held to the same high standards of perfection as practicing</u>

9  <u>lawyers. See Haines v. Kerner 92 Sct 594, also See Power 914 F2d 1459 (11th</u>

10 <u>Cir1990), also See Hulsey v. Ownes 63 F3d 354 (5th Cir 1995). also See In</u>

11 <u>Re: HALL v. BELLMON 935 F.2d 1106 (10th Cir. 1991)."</u>

12

13 <u>In Puckett v. Cox, it was held that a pro-se pleading requires less</u>

14 <u>stringent reading than one drafted by a lawyer (456 F2d 233 (1972 Sixth</u>

15 <u>Circuit USCA). Justice Black in Conley v. Gibson, 355 U.S. 41 at 48 (1957)</u>

16 <u>"The Federal Rules rejects the approach that pleading is a game of skill in</u>

23

1  which one misstep by counsel may be decisive to the outcome and accept the

2  principle that the purpose of pleading is to facilitate a proper decision on

3  the merits." According to Rule 8(f) FRCP and the State Court rule which

4

5  **Defense against dismissal of complaint under Rule 12-B**

6

7  There is legal sufficiency to show Plaintiff is entitled to relief under his

8  Complaint. A Complaint should not be dismissed for failure to state a claim

9  unless it appears beyond a doubt that the Plaintiff can prove no set of

10  facts in support of his claim which would entitle him to relief. See Conley

11  v. Gibson, 355 U.S. 41, 45-46 (1957) also Neitzke v. Williams, 109 S. Ct.

12  1827, 1832 (1989). Rule 12(b)(6) does not countenance dismissals based on a

13  judge's disbelief of a complaint's factual allegations. In applying the

14  Conley standard, the Court will "accept the truth of the well-pleaded

15  factual allegations of the Complaint."

16

1        **Pro Se litigants entitled to Fees:**

2    **Pro se litigants are entitled to Attorney fees and costs under the Civil**

3    **Rights Attorney's Fee Award Act of 1976, 90 Stat. 2641, as amended 42 USC**

4    **1988.**

5

6    The right to appear pro se in a civil case in federal court is defined by statute 28

7    U.S.C. § 1654.

8

9    **libel per se cases,**

10    broadcast or written publication of a false statement about another which accuses

11   him/her of a crime, immoral acts, inability to perform his/her profession, having a

12   loathsome disease (like syphilis), or dishonesty in business. **Such claims are**

13   **considered so obviously harmful that malice need not be proved to obtain a**

14   **judgment for "general damages," and not just specific losses. (See:**

15   **defamation, libel, slander).**

16

17

18

**Specific relief requested,**

**Monetary damages-**

**General damages-** which reimburse plaintiffs for **emotional distress and reputational harm-**

**Jesse Schaudies** due the fact mr schaudies filed a fraudulent protective order lawsuit due to all his lies in it under rule Rule 56.08: Affidavits Made in Bad Faith.(Tennessee law)

**Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith** or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including **reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt**. [Amended by order effective July 1, 1993; and by order effective July 1, 1997.]

The pain and suffering from being In jail was horrible my car was toed I was wrongfully imprisoned and when I got out of jail I had 70 dollars in

26

my pocket, being that my car was toed I had to sit out in the cold till 3

am that night so my brother could send me 100 dollars for the hotel and

250 dollars to get the car out of the toe yard, it really aggravated my

PTSD  I request **1.89 million dollars** in **general damages** from Jesse

Schaudies due to his aggravated perjury causing me to sleep on the street

the night and day I was arrested I also requested 1.89 million in general

damages from for being accessories to Jesse Schaudies many crimes.

Jesse  Schaudies 1.89 million dollars - general damages

Venable LLP   1.89 million dollars- general damages

13 management 1.89 million dollars- general damages

Neal and Harwell 1.89 million dollars- general damages

**Special damages- which reimburse plaintiffs for actual losses**

**For being falsely arrested which cost me to be toed(250) also the hotel room**

**(100) and the amount on time spent on case 21c444 I spent from 3-5-2021 to 7-**

27

1    **20-2021** a day before my birthday **fighting the case I spent about 15 hours a**

2    **week on this case for 4 months 180 hours id like 100 a hour I worked on the**

3    **case, the same as a beginning level lawyer 180 time 100, 18,000 dollars a**

4    **defendant plus 350 dollars for the hotel and toe**

5    Jesse  Schaudies 18,350 - special damages

6    Venable LLP   18,350  dollars- special damages

7    13 management 18,350  dollars- special damages

8    Neal and Harwell 18,350  dollars- special damages

9                      **Punitive damages**

10   **Under NC law  N.C.G.S. § 1D-25(b) I request 2,000,000 in punitive from**

11   **each defendant,**

12   Jesse  Schaudies  2,000,000  - Punitive damages

13   Venable LLP    2,000,000  dollars- Punitive damages

14   13 management 2,000,000   dollars- Punitive damages

15   Neal and Harwell  2,000,000  dollars- Punitive damages

16

17   # For a grand total of 15,633,400 million dollars.

1   The relief requested is so severe due to Jesse  Schaudies Venable LLP 13

2   management Neal and Harwell statements not only being defamatory but

3   criminal under federal law and state law

4       1.  **18 U.S. Code § 1001 (Federal law)**

5       2.  **39-16-703 - Aggravated perjury. (Tenn. State law)**

6

7   **<u>Memorandum for punitive damage's</u>**

8   Because punitive damages are intended to punish the wrongdoer, a wealthy

9   wrongdoer should face a higher punitive damages award than a less wealthy

10  party. Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928, 148 CR 389 ("the function

11  of deterrence . . . will not be served if the wealth of the defendant allows him or

12  her to absorb the award with little or no discomfort"). Little v Stuyvesant Life Ins.

13  Co. (1977)67 CA3d 451, 469, 136 CR 653; see also Michelson v Hamada (1994)29

14  CA4th 1566, 1595, 36 CR2d 343. [a]lthough appellate courts have sometimes used

15  the terms "wealth," "financial condition" and "net worth" interchangeably

16  [citations], clearly these terms are not synonymous. And, while "net worth" is

17  probably the financial measurement most often used in setting the amount of

18  punitive damages, no court has held that it is the only permissible measurement.

See also Cheung v Daley (1995)35 CA4th 1673, 1677, 42 CR2d 164; Kizer v County of San Mateo (1991) 53 C3d 139, 147, 279 CR 318. In Clark v McClurg (1932) 215 C 279, 9 P2d 505, however, an award of $5000 in punitive damages was upheld when the jury left blank the space for actual damages.

In Cheung, defendant was accused of fraudulently transferring real property to evade satisfaction of a nuisance judgment against him. The jury found that plaintiff was entitled to compensatory damages in the amount of $0. The jury further found that by making the fraudulent transfers, defendant had acted with fraud, oppression, or malice, and awarded punitive damages. On appeal, the court concluded that "the rule of Mother Cobb's Chicken -- that an award of exemplary damages must be accompanied by an award of compensatory damages–is still sound. That rule cannot be deemed satisfied where the jury has made an express determination not to award compensatory damages." 35 CA4th at 1677.

Michelson v Hamada (1994)29 CA4th 1566, 1593, 36 CR2d 343; Las Palmas Assocs. v Las Palmas Center Assocs. (1991)235 CA3d 1220, 1243, 1 CR2d 301 ("punitive damages are not awarded for the purpose of rewarding the plaintiff, but to punish the defendant"); Kaye v Mount La Jolla Homeowners Ass'n

30

1 (1988)204 CA3d 1476, 1493, 252 CR 67; Dyna-Med, Inc. v FEHC (1987) 43 C3d

2 1379, 1387, 341 CR 67 (punitive damages "serve but one purpose—to punish and

3 through punishment, to deter"); Castaic Clay Mfg. Co. v Dedes (1987)195 CA3d

4 444, 450, 240 CR 652; Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928 n13, 148

5 CR 389. Accordingly, punitive damages should not be greater than the amount

6 necessary to accomplish these goals. Weeks v Baker & McKenzie (1998)63 CA4th

7 1128, 1166, 74 CR2d 510; Michelson v Hamada (1994)29 CA4th 1566, 1593, 36

8 CR2d 343; Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928 n13, 148 CR 389 ("the

9 function of punitive damages is not served by an award which, in light of the

10 defendant's wealth and the gravity of the particular act, exceeds the level

11 necessary to properly punish and deter").

12 The deterrence justification for punitive damages is motivated by two objectives:

13 (1) to deter the specific defendant in the case from repeating or continuing his,

14 her, or its offensive behavior and (2) to deter, generally, other potential parties

15 from committing similar offenses. See Restatement (Second) of Torts §908. This

16 rationale of deterrence is especially strong in cases in which other measures of

17 civil damages, and the unlikely prospect of criminal prosecution, are together

18 insufficient to prevent an individual or entity from engaging in a wrongful act.

1   Indeed, absent the fear of punitive damages, a defendant may have little

2   incentive to discontinue the unlawful or harmful conduct.

3   determine the amount of punitive damages to award, the Book of Approved Jury

4   Instructions (BAJI) states that the jury should consider:

5   (1) The reprehensibility of the conduct of the defendant.

6   (2) The amount of punitive damages which will have a deterrent effect on the

7   defendant in the light of defendant's financial condition.

8   Even if plaintiff suffers only minimal damage, willful and intentional misconduct

9   may be basis for award of punitive damages, In re Baker, 18 B.R. 243, 245 (Bankr.

10   WDNY 1982).

11   Punitive damages may be awarded in a tort action arising from the parties

12   contractual relationship and other matters if the plaintiff demonstrates; (1) that

13   the defendant's conduct is actionable as independent tort; (2) the tortious

14   conduct is of an egregious nature; (3) the egregious conduct is directed toward

15   the plaintiff; (4) the defendant's conduct is part of a pattern directed at the public

16   generally, Conocophillips v. 261 E. Merrick Rd. Corp., 428 F.Supp.2d 111, 129

17   (EDNY 2006).

punitive damages should be reserved for cases where defendant acted with the degree of malice akin to the mens rea required for most crimes, Jeffries v. Harleston, 21 F.3d 1238, 1249, cert. granted, vacated on other grounds, 513 U.S. 996 (1994).

There is no maximum dollar amount of punitive damages that a defendant can be ordered to pay. In response to judges and juries which award high punitive damages verdicts, the Supreme Court carved out a notable exception to this rule of proportionality in the case of TXO Production Corp. v. Alliance Resources Corp., where it affirmed an award of $10 million in punitive damages, despite the compensatory damages being only $19,000, a punitive-to-compensatory ratio of more than 526.

**Foot notes,**

**In closing like id like to state a few things**

**1st** these claims have never be brought before and I believe that the claims fall under   Per Se Defamation which loses don't need to be proven .

**2nd**   Waverly D. Crenshaw, Jr, **has been feloniously impeding the due administration  of justice (  18 U.S. Code § 1505 as we speak.**

Case 1:21-cv-00870-WO-LPA    Document 2    Filed 11/08/21    Page 33 of 37

1   **3rd** 13 management and tas management (same entity) and their conspirators

2   have recently committed rico violations in this court **Case No. 3:21-cv-00136**

3   involving invalid copyright 1989, William L. Campbell, Jr presided over a  Case No.

4   3:21-cv-00136 in  the very same court he committed Rico violations in case 3:20-

5   cv-00938 Silva v. Mullen et al. earlier in the year.

6   **4th all prior federal cases involving Taylor Swift and related entities are void** due

7   to all judges denying my 5th and 14th amendment rights, A judgment may not be

8   rendered in violation of constitutional protections. The validity of a judgment may

9   be affected by a failure to give the constitutionally required due process notice

10   and an opportunity to be heard. Earle v. McVeigh, 91 US 503, 23 L Ed 398. See

11   also Restatements, Judgments ' 4(b). Prather vLoyd, 86 Idaho 45, 382 P2d 910.

12   The limitations inherent in the requirements of due process and equal protection

13   of the law extend to judicial as well as political branches of government, so that a

14   judgment may not be rendered in violation of those constitutional limitations and

15   guarantees. Hanson v Denckla, 357 US 235, 2 L Ed 2d 1283, 78 S Ct 1228.

16   A void judgment is not entitled to the respect accorded a valid adjudication, but

17   may be entirely disregarded, or declared inoperative by any tribunal in which

18   effect is sought to be given to it. It is attended by none of the consequences of a

1  valid adjudication. It has no legal or binding force or efficacy for any purpose or at

2  any place. ... It is not entitled to enforcement ... All proceedings founded on the

3  void judgment are themselves regarded as invalid. 30A Am Jur Judgments '' 44,

4  45.

5  **5th** if you're wondering why no new papers or new channels have ever picked up

6  this story in over 15 lawsuits in nearly 5 years, its because ive strategically placed

7  that fact that im the American cousin(3rd) of former **Irish republican leader**

8  **(Charlie kerins)** who almost destroyed the English crown during world war 2 at

9  age 24 year old, also I'm related to former Irish supreme court Judge (**Frank**

10  **griffin)(3rd cousin)**   (1 April 1919 – 5 June 2016) was an Irish judge who served as

11  a Judge of the **Supreme Court from 1973 to 1991.**

12  **Griffin was a Judge-in-Residence at University College Dublin in the Sutherland**

13  **School of Law. From 1991 to 1996,** he served as President of the Council of the

14  Royal Victoria Eye and Ear Hospital. **His son, Gerry Griffin**, serves as judge on the

15  Irish Circuit Court.[2] He died in 2016, at the age of 97. Frank was so smart at law

16  he thought at Dublin  University, you can see why I'm so gifted and talented at

17  law. His son is also my cousin a circuit court judge.

35

1   6th in  Case 4:19-cv-00286-RH-MJF I was 12 days aaway from winning **189,000,000**

2   **in a default judgement** because there was no way to answer my complaint

3   without admitting to rico violations until judge Michael frank violated my due

4   process right and committed **mail and wire fraud to strike my complaint**. So just

5   in case this court wonders if im even giving up you know the answer.

6   7th  Neal and Harwell and Venable LLP filing are not protected due to the fact their

7   actions consist crimes, **The attorney-client privilege protects most**

8   **communications between clients and their lawyers. But, according to the crime-**

9   **fraud exception to the privilege, a client's communication to her attorney isn't**

10  **privileged if she made it with the intention of committing or covering up a crime**

11  **or fraud.**

12  **Even if somehow this court determines Venable LLP and 13 managements filings**

13  **are privileged in stating my cases were frivolous (which they are not),  James**

14  **Baldridge a lawyer for Venable LLP <u>stated I was wearing a bullet proof vest the</u>**

15  **<u>day I was arrested tying to arrest ms swift, a lie  Neal and Harwell parroted and</u>**

16  **<u>repeated.</u>  And finally, the next judge who violates my due process rights I will**

17  **attempt an arrest in their own courtroom, I attempted an arrest on swift,**

18  **unarmed knowing she had armed guards**, one last thing my grandmothers 4

36

brothers **all  served in world war 2** Edward Kelleher, John p. Kelleher, Donald

Kelleher,Joseph Kelleher, so I suggest this court grants me **proper due process**

**every united states citizen is entitled too.**

Daniel James silva **P ro se attorney**     11/1/2021

Celticmoon1989@yahoo.com

501 Lester Lane Winston Salem NC  27103

**P.S. to fight swift and her conspirators, ive had to learn trademark law. IP**

**law, Rico law, criminal law at both state and federal level in Florida and**

**Tennessee, Tennessee state civil law,  civil rights law, civil litigation and now**

**deformation law at the federal level and north Carolina state  level not to**

**mention NC local rules, it only took about 20 minutes to learn defamation law**

**and 10 minutes to learn the local rules of NC, also it only took about 2 days to**

**write this entire lawsuit, I wouldn't underestimate me in any sense. What is**

**that over 10 different type of law most lawyers need to go to 8 to 12 years of**

**school for one of these types of law, I'm fluent in all of them in 4 years**