IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

| | |
|---|---|
| 13 MANAGEMENT, LLC, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. _____ |
| DANIEL JAMES SILVA, | ) |
|     Defendant. | ) |

*Exhibit B* [handwritten]

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S PETITION FOR RESTRAINING ORDER

Pursuant to Tenn. R. Civ. P. 65.03, Plaintiff 13 Management, LLC, respectfully submits this Memorandum of Law in Support of its Petition for a Restraining Order. For the reasons stated herein, as well as the declaration attached hereto, a restraining order is necessary to prevent further harm or damage to Plaintiff, its represented Artist, its members, owners, employees, and business affiliates, as well as their friends and families (the "13 Management Parties") from escalating and threatening conduct by Defendant. As such, Plaintiff respectfully requests that this Court grant its Petition for Restraining Order and enter the proposed Order, attached as **Exhibit 1**.

### INTRODUCTION

Since March 2017, Daniel James Silva (hereinafter "Silva" or "Defendant") has engaged in an ongoing and unrelenting harassment campaign directed against Artist, including numerous frivolous litigation proceedings and a constant stream of escalating threats and harassing conduct (notably including a physical visit to Artist's family home—with body armor in his car—to "arrest" Artist). In the four years since this campaign began, Silva has filed twelve frivolous lawsuits (with a thirteenth on the way) against Artist, individuals and entities related to Artist, their counsel, their counsel's law firm, Artist's family members, and judges who previously dismissed Silva's frivolous lawsuits and with whom he takes issue with those rulings. Defendant is obsessed

with Artist, and has used the courts as a vehicle to harass, demean, and threaten Artist and others affiliated with them.

Throughout the pendency of these lawsuits, Silva has engaged in an unending onslaught of threatening, inappropriate, expletive-riddled, and vulgar emails to defense counsel. Recently, Defendant began sending those emails to a member of 13 Management—an act in direct violation of a protective order previously issued in a civil litigation. These recent communications have escalated in both frequency and tone. Silva has also traveled to Artist's family home in Nashville on three occasions (and threatened to do so many other times). As noted above, his latest visit to the family home (done in the midst of a global pandemic), Silva arrived with body armor in his car, with the stated intention to "arrest" Artist. Plaintiff failed to appear to answer for his criminal trespass charge, and a warrant for his arrest is currently outstanding in Davidson County.

Defendant's threatening conduct and communications have struck and continue to strike fear into the 13 Management Parties. Namely, the 13 Management Parties have grown extremely concerned that Defendant will further lose his grip with reality, continue to escalate his threatening conduct, and do something to harm the 13 Management Parties. Defendant appears to be psychologically unstable, has threatened Artist and the 13 Management Parties in a significant number of communications, and shows no signs of ceasing his harassing and threatening conduct without legal intervention. Indeed, without such intervention it appears his conduct will continue to escalate. The 13 Management Parties believe Defendant to be a credible and imminent security concern, and for these reasons and those that follow, Plaintiff respectfully requests that the Court grant its Petition for Restraining Order.

## STATEMENT OF FACTS

Plaintiff 13 Management LLC is an artist management company representing an internationally acclaimed American singer and songwriter who resides in Davidson County.

2

COPY

(Declaration of Jesse P. Schaudies, Jr. ¶ 4 (hereinafter "Schaudies Decl.")). Since March of 2017, Defendant has engaged in an ongoing and unrelenting frivolous litigation campaign, directed against the Artist. (Schaudies Decl. ¶ 6.) [annotation: "Lie"] In that time, he has repeatedly filed frivolous lawsuits against Artist, individuals and entities related to Artist, their counsel, their counsel's law firm, Artist's family members, and judges who previously dismissed Silva's frivolous lawsuits and with whom he takes issue with those rulings. (Schaudies Decl. ¶ 6.) [annotation: "Lie"] Silva has now filed twelve lawsuits, in three different federal courts, including two in the Middle District of Tennessee, stemming from baseless claims against Artist and related entities. ((Schaudies Decl. ¶ 6.) Additionally, Mr. Silva recently sent counsel a pre-filing copy of a complaint for a thirteenth lawsuit, a practice Mr. Silva has followed before filing many of his other lawsuits. (Schaudies Decl. ¶ 6 n.1.) There are currently three frivolous lawsuits pending. (Schaudies Decl. ¶ 6.) [annotation: "Lie"] All other lawsuits have been dismissed for (1) violations of court orders, or (2) failing to assert non-frivolous claims. (Schaudies Decl. ¶ 6.)

During Silva's four-years-long vexatious litigation campaign, [annotation: "Lie"] Mr. Silva has traveled to Artist's family home in Nashville on three occasions and threatened to do so many other times. (Schaudies Decl. ¶ 7.) The first visit to Artist's family home was in October 2018. (Schaudies Decl. ¶ 7.) Notably, this visit was in direct violation of a civil court order requiring that Plaintiff have no contact with Artist and resulted in one of his lawsuit's being dismissed as a sanction for his numerous, egregious, knowing violations of the court's orders. (Schaudies Decl. ¶ 7.) During this visit, Mr. Silva deposited a number of items over the fence of the Artist's family home. (Schaudies Decl. ¶ 7.)

COPY

Silva's second visit to Artist's family home took place in October 2019. (Schaudies Decl. ¶ 8.) Again, Defendant deposited items at the security gate upon his arrival. (Schaudies Decl. ¶ 8.)

In May 2020 (in the midst of a global pandemic), Defendant returned to the Artist family home for the third time. (Schaudies Decl. ¶ 9.). The stated purpose of this trip was to effect a citizen's arrest on Artist. (Schaudies Decl. ¶ 9.) Silva arrived at the house with body armor in his car and was arrested for criminal trespass and removed in handcuffs. (Schaudies Decl. ¶ 9.) On September 28, 2020, a warrant for Silva's arrest was issued by Davidson County after Silva failed to appear to answer for his Criminal Trespass charge stemming from this arrest. (Schaudies Decl. ¶ 9.) That warrant remains outstanding. (Schaudies Decl. ¶ 9 & Exhibit A.)

During the course of his twelve lawsuits, Silva has also engaged in an ongoing onslaught of inappropriate, threatening, and expletive-riddled emails to defense counsel. (Schaudies Decl. ¶ 10.) These emails, while generally nonsensical in nature, contain vile, obscene language, with lewd, misogynistic, and threatening references. (Schaudies Decl. ¶ 10.) Many of these emails are directed at Artist and contain threats and vulgar language. (Schaudies Decl. ¶ 10.) Beginning in early 2021, Defendant began sending these emails to other attorneys at defense counsel's law firm, as well as another Middle District of Tennessee lawyer with ties to entities related to Artist. (Schaudies Decl. ¶ 10.) Recently, Silva has begun sending these threatening and inappropriate emails to a senior member of Plaintiff. (Schaudies Decl. ¶¶ 4, 11.) In the span of three weeks, this individual has received over forty emails from Defendant. (Schaudies Decl. ¶ 11.) Notably, these emails violate a protective order previously issued in one of Silva's many frivolous lawsuits that required he have no communications with anyone affiliated with Artist. (Schaudies Decl. ¶ 11.)

4

Silva's false and delusional claims are unending and recently have become even more incessant and disconnected from reality. (Schaudies Decl. ¶ 13.) Indeed, in the past week, Mr. Silva has sent threatening emails, (1) claiming that he has nothing to lose while Artist has everything to lose, (2) claiming that he cannot be held responsible "for what happens next," (3) telling Artist to "give up . . . or suffer the rest of your life," and (4) explaining that he knowingly "skipped out on [his] trespass trial" in Tennessee. (Schaudies Decl. ¶ 14.) Given the years-long record of Mr. Silva's delusional, erratic and escalating behavior, the 13 Management Parties believe Silva constitutes a direct and troubling threat to their health and safety and that of their business affiliates, and the friends and family of the same. (Schaudies Decl. ¶ 14.)

The hundreds of inappropriate email communications, three trips to Artist's family home, other contacts, and vexatious filings Silva has engaged in over the past four years are detailed further in a compilation attached as Exhibit B to the Schaudies Declaration.

Defendant's campaign to harass and threaten the 13 Management Parties has struck and continues to strike fear into the 13 Management Parties, who remain greatly concerned that Defendant will continue to escalate his threatening conduct and will do something to harm them, their business affiliates, or members of their families. (Schaudies Decl. ¶ 16.) Defendant appears to be psychologically unstable and has threatened the 13 Management Parties in various communications on numerous occasions. (Schaudies Decl. ¶ 16.). As a result of this ongoing threatening conduct and its recent escalation, the 13 Management Parties believe Defendant to be a credible and immediate security concern that will not only fail to abate without legal intervention but will continue to escalate. (Schaudies Decl. ¶ 17.) Indeed, numerous less severe orders to curb Mr. Silva's behavior in multiple civil litigations have gone largely ignored and Mr. Silva has willfully violated them. (Schaudies Decl. ¶ 17.)

The 13 Management Parties have already suffered tremendous harm as a result of Defendant's threatening and harassing behavior, including but not limited to, unneeded stress, fear and anxiety arising from Defendant's threatening conduct, not to mention the expenditure of money and other resources to increase security on numerous occasions related to Silva's visits to the Artist family home. (Schaudies Decl. ¶ 18.) The 13 Management Parties believe that Defendant's behavior will only escalate if he is not ordered to stop. (Schaudies Decl. ¶ 18.) While Plaintiff carefully safeguards the safety and security of the 13 Management Parties by employing security personnel and by securing their respective business and personal properties, it is readily apparent that such protection will not and cannot stop Silva's abusive and escalating conduct. (Schaudies Decl. ¶ 19.) As such, Defendant's conduct has caused, and continues to cause, the 13 Management Parties to be concerned for their safety and wellbeing, including that of their friends, family members, and business affiliates. (Schaudies Decl. ¶¶ 13, 19.)

## ARGUMENT

This Court has the authority to, and should, grant an order restraining Defendant from harassing, intimidating, and threatening the 13 Management Parties. *See* Tenn. R. Civ. P. 65.03(2). Under Rule 65.03(1) of the Tennessee Rules of Civil Procedure, "a restraining order may be granted at the commencement of the action or during the pendency thereof without notice if it is clearly shown by verified complaint or affidavit that the applicant's rights are being or will be violated by the adverse party and the applicant will suffer immediate and irreparable injury, loss or damage before notice can be served and a hearing had thereon." Tenn. R. Civ. P. 65.03(1).

Courts consider four factors when determining whether injunctive relief should be granted: "(1) the threat of irreparable harm to plaintiff if the [restraining order] is not granted; (2) the balance between this harm and the injury that granting the [restraining order] would inflict on the

defendant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest." *Gentry v. McCain*, 329 S.W.3d 786, 793 (Tenn. Ct. App. 2010). A Plaintiff need not prove all four factors to obtain relief, as they are "factors to be balanced, not prerequisites to be met." *See Wilson v. Lexington-Fayette Urban Cnty. Gov't*, 201 Fed. App'x 317, 320-21 (6th Cir. 2006).[1] Given Defendant's unending vexatious litigation campaign, three trips to Artist's family home, and constant and escalating communications with threats against the same, the low risk of harm posed by such an order, the stress and fear Defendant has already inflicted on Artist and the 13 Management Parties, and the threat such behavior poses to the public interest, each of these factors weighs strongly in favor of granting this order.

Absent a restraining order, Defendant's conduct will irreparably harm Plaintiff and the 13 Management Parties. Irreparable injury occurs when the harm "would impair the court's ability to grant an effective remedy." *Riverside Park Realty Co. v. FDIC*, 465 F. Supp. 305, 315 (M.D. Tenn. 1978). Defendant's actions threaten the 13 Management Parties' safety and security, which they have carefully safeguarded by employing security personnel and by securing their respective properties. (Schaudies Decl. ¶ 19.) These steps, however, are insufficient to stop a determined and abusive actor such as Defendant. (Schaudies Decl. ¶ 19.)

Defendant's repeated unstable and delusional behavior has made Plaintiff justifiably afraid that Defendant may inflict real physical harm on the 13 Management Parties, their colleagues and business partners, and their friends and families, an injury the court would be unable to remedy. (Schaudies Decl. ¶¶ 15–18.) Since March 2017, Defendant has engaged in an ongoing and unrelenting frivolous litigation campaign directed against the Artist and affiliates, has traveled to an Artist family home three times (and threatened to do so many more times)—including once

---

[1] Although federal district court decisions are not binding on state courts, state courts usually treat district court decisions as persuasive authority.

7

COPY

with body armor in his car—and with the stated purpose of arresting Artist—and has engaged in an ongoing onslaught of threatening, inappropriate, and expletive-riddled emails to defense counsel and others related to Plaintiff throughout the pendency of his twelve lawsuits. (Schaudies Decl. ¶¶ 6-11.). Recently, Defendant's false and delusional claims have become even more incessant and disconnected from reality. (Schaudies Decl. ¶¶ 13-15.) In the past week alone, Mr. Silva has sent threatening emails, (1) claiming that he has nothing to lose while Artist has everything to lose, (2) claiming that he cannot be held responsible "for what happens next," (3) telling Artist to "give up . . . or suffer the rest of your life," and (4) explaining that he knowingly "skipped out on [his] trespass trial" in Tennessee. (Schaudies Decl. ¶ 14.)

The escalation of Defendant's behavior over a sustained period of time, underscores the need to take the threat Defendant poses to the 13 Management Parties seriously. In stark contrast, the risk of harm to Defendant posed by this order is virtually non-existent—Defendant must merely cease contact with Plaintiff and the 13 Management Parties. On information and belief, Defendant is not—nor has he ever been—in the public eye or in any other profession or position that will be adversely affected were this Court to issue the requested Order. Moreover, Defendant's ordinary activities would not be unreasonably restricted by this Order. Defendant has no ties to the Tennessee area beyond his obsession with the 13 Management Parties and his outstanding arrest warrant, and lives in North Carolina. Defendant's lack of connection to the 13 Management Parties would make complying with the proposed order straightforward and simple. Plaintiff's demonstrated risk of irreparable injury outweighs the minimal, if any, speculative harm to Defendant.

Furthermore, there is a substantial likelihood of success on the merits against Defendant given the flagrant and threatening nature of his actions. Defendant has repeatedly threatened the

COPY

13 Management Parties in writing and court filings and has traveled to Artist's family home three times. (Schaudies Decl. ¶¶ 14.) Defendant has already caused the Plaintiff and the 13 Management Parties unneeded stress, fear, and anxiety, not only for their own safety but also for that of their many employees, business affiliates, friends or members of their families. (Schaudies Decl. ¶ 18.) Given that the likelihood on the merits need not be proven "wholly without doubt," the strength of Plaintiff's claims based on the facts set forth in the attached declaration weighs heavily in favor of this Petition. *Riverside*, 465 F. Supp. at 310. Without court intervention, Defendant will undoubtedly continue his behavior; indeed, he has already ignored and willfully violated less severe orders in a number of his vexatious civil cases. (Schaudies Decl. ¶¶ 7, 11, 17.) No other legal remedy is sufficient to protect the 13 Management Parties.

Finally, the public interest would be eminently served by issuing the temporary restraining order. Defendant has threatened the 13 Management Parties and has on least three occasions travelled to Nashville to make good on his threats. (Schaudies Decl. ¶¶ 7-9.) These behaviors are acutely antisocial, dangerous and serve no beneficial purpose. Defendant's threatening and disturbing conduct runs counter to the public interest, and as such, this factor also weighs in Plaintiff's favor.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Petition for a Restraining Order and enter the proposed order, attached as **Exhibit 1**.



This the 5th day of March, 2021.

        Respectfully Submitted,

        **NEAL & HARWELL, PLC**

        By: */s/ William T. Ramsey*
            William T. Ramsey, #9245
            Mariam N. Stockton, #029750
            Mozianio S. Reliford III, #036170

        1201 Demonbreun Street, Suite 1000
        Nashville, Tennessee 37203
        (615) 244-1713 – Telephone
        (615) 726-0573 – Facsimile

        *Counsel for Plaintiff 13 Management LLC*



## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 5th day of March 2021, a true and correct copy of the foregoing was served via U.S. Mail, first class and certified, return receipt requested, postage prepaid, upon Defendant,

    Daniel James Silva
    P.O Box 493
    Colfax, NC 27235

                                           */s/ William T. Ramsey*